NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JOHN BRANDT,

        Plaintiff,

    v.

AARON AUNACH, SUNG LEE, JEFFREY
NURENBERG,

        Defendants.

CIVIL ACTION NO. 05-2070
(DRD)

**OPINION**

Appearances

JOHN BRANDT (PRO SE)
Ancora Psychiatric Hospital
301 Spring Garden Road
Ancora, New Jersey 08037-9699
    *Pro Se Plaintiff*

KATIUSCA POLANCO
Deputy Attorney General
State of New Jersey Office of the Attorney General
25 Market Street
PO Box 112
Trenton, New Jersey 08625-0112
    *Attorneys for Defendants Aaron Aunach, Sung Lee, and Jeffrey Nurenberg*

### *OPINION*

**DEBEVOISE, Senior District Judge**

    This action was commenced by Plaintiff, a pro se psychiatric patient, involuntarily

committed to the Greystone Psychiatric Hospital, who alleges he was denied due process in

violation of the Fourteenth Amendment and 42 U.S.C. § 1983 by being assaulted by an employee of the hospital and involuntarily transferred to another hospital.  Defendants have moved the Court to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and  failure to exhaust administrative remedies.  For the reasons set forth below Defendants' motion is denied in part and granted in part.

### FACTS AS ALLEGED IN THE COMPLAINT

Plaintiff was found not guilty by reason of insanity in a prior criminal proceeding. (Compl. at 2)  Until March 25, 2005, he was involuntarily civilly committed at the Greystone Park Psychiatric Hospital ("Greystone") pursuant to the rule set out in State v. Krol, 68 N.J. 236 (1975).  (Compl. at 2) In his complaint, Plaintiff alleges that on March 24, 2005, he was at his residential building on the hospital grounds, where he and three other patients were preparing to attend a social event in another building on the grounds.  (Compl. at 2)  At approximately 6:40 p.m., plaintiff alleges that a nurse instructed another committed patient ("Braitwait") to find Defendant Aunach so Mr. Aunach could escort the four patients to the social event.  (Compl. at 2)  Mr. Aunach was a Human Service Technician employed by Greystone.  (Compl. at 2)

Plaintiff alleges that Braitwait looked all around for Aunach and finally found him sleeping in the kitchen area of the building.  Plaintiff alleges that Braitwait was yelling for Aunach and pounding on the door to the kitchen.  (Compl. at 3)  When Aunach finally exited the kitchen, Plaintiff claims Aunach said "who the fuck is calling me like that." (Compl. at 3)  Plaintiff alleges that he told Aunach that Braitwait and the nurse were looking for him, and Aunach thereafter attacked Plaintiff without justification.  (Compl. at 3)  Plaintiff alleges that

2

Aunach grabbed him by the throat and punched him in the face several times.  (Compl. at 3)
Plaintiff shoved Aunach away in an attempt to defend himself.  (Compl. at 3)  After the
altercation was stopped by police, Plaintiff claims Defendant Dr. Lee, the psychiatrist on call,
walked through the area and refused to evaluate Plaintiff or allow Plaintiff to speak with him.
(Compl. at 3)  After Dr. Lee left the area, Plaintiff claims that he went to bed, only to wake up
the following morning to find that he was being transferred to the Ann Klein Forensic Center, a
hospital with a higher level of security.

Plaintiff filed a complaint in this Court claiming that Aunach's assault, Dr. Lee's failure
to evaluate or inquire into Plaintiff's clinical state, and Defendant Dr. Nurenberg's (the Chief of
Psychiatry at Greystone) authorization of a transfer without evaluation or screening Plaintiff,
denied Plaintiff of due process in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

## DISCUSSION

A. Standard for Dismissal - 12(b)(6)

Defendants argue that Plaintiff's complaint should be dismissed pursuant to Fed. R.Civ.
P. 12(b)(6) Failure to State a Claim Upon Which Relief May be Granted, and for failure to
exhaust administrative remedies.  Rule 12(b)(6) states in part :

> Every defense, in law or fact, to a claim for relief in any pleading, whether a
> claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the
> responsive pleading thereto if one is required, except that the following defenses
> may at the option of the pleader be made by motion: ...(6) failure to state a claim
> upon which relief can be granted...

Pursuant to Rule 12(b)(6), a complaint shall be dismissed for failure to state a claim upon

which relief can be granted only if a court finds "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 46 (1957); Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980); Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 634 (3d Cir. 1989).  Allegations contained in the complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and the plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations." Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  The court is limited to facts contained and alleged in the complaint and may not consider facts raised for the first time by parties in legal briefs.  Hauptmann v. Wilentz, 570 F. Supp. 351, 364 (D.N.J. 1983), aff'd without opinion, 770 F.2d 1070 (3d Cir. 1985).  The Court will accept the alleged facts as true and view them in the light most favorable to the non-moving party.  Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000).   The question the court must answer is not whether Plaintiff will prevail, but rather whether there are any circumstances that would entitle him to relief. Hishon v. Spalding, 467 U.S. 69, 73 (1984).


B. Assault by Aunach

        In paragraph (36) of the complaint, Plaintiff claims that the assault on him by Aunach, which consisted of choking and punching Plaintiff, deprived him of his Fourteenth Amendment right to due process.  Although in their notice of motion, Defendants request dismissal of the entire complaint for failure to state a claim upon which relief can be granted, Defendants have not addressed this point in their motion to dismiss, and do not cite any reason for dismissal of this Count of the complaint.

4

The United State Supreme Court has held that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989).  Additionally, in Youngberg v. Romeo, 457 U.S. 307 (1982), a case involving a mentally ill person involuntarily committed to a State institution, the Supreme Court reasoned that "persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Id. at 321-22. Involuntarily committed persons enjoy "constitutionally protected interests in conditions of reasonable care and safety," giving rise to an unquestioned "State duty to provide reasonable safety for all residents and personnel within the institution." Id. at 324.  Because Plaintiff in the present case was an involuntarily committed patient in State custody, the Fourteenth Amendment imposes upon the defendants, as state actors, an affirmative duty to undertake some responsibility for providing him with a reasonably safe environment.  If official conduct is so egregious or outrageous that it is "conscience shocking," then it rises to the level of a substantive due process violation.  County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998).  In the present case, Aunach's alleged acts of choking, and punching Plaintiff for no apparent reason certainly pass this test.  The State cannot explain how any relevant State interest in committing acts as those alleged would outweigh Plaintiff's liberty interest.  As Defendants have failed to cite any contradicting authority, the Court will not dismiss this Count of the complaint.

C.  Transfer to Ann Klein Medical Center

5

In paragraphs (37) and (38) of the complaint, Plaintiff alleges a violation of his Fourteenth Amendment right to due process by Defendants Dr. Lee and Dr. Nurenberg for transferring Plaintiff to a more secure hospital setting without sufficient cause and without conducting a proper clinical review of his case.  Defendants argue in their brief that these counts should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted and has also failed to exhaust his administrative remedies.

N.J.A.C. 10:36-3.3(a)(4) dictates that an involuntarily committed patient may be transferred "to provide greater or less clinical structure or security."  N.J.A.C. 10:36-3.4 delineates the conditions and procedures applicable to all transfers to and from State psychiatric hospitals:

> e) The following procedures shall be followed in cases of non-emergent transfers:
>
> 1. The transfer coordinator of the sending hospital shall consult with the transfer coordinator of the receiving hospital. If they agree to the transfer, they shall arrange for a specific date and time for the transfer to occur.
>
> 2. Hospital staff shall actively promote resident input into non-emergency transfer decisions.
>
> 3. At least seven days prior to the transfer date, staff at the sending institution shall notify the relevant County Adjusters, family and attorney of the patient being transferred of the transfer decision, the reason for the transfer and the procedural rights in this chapter.
>
> 4. It is the responsibility of the hospital initiating the transaction to make arrangements for transporting the patient from one facility to the other.
>
> 5. If the transfer coordinators do not agree on the transfer, the matter shall be referred to the CEOs of the respective institution for resolution.
>
> 6. If the CEOs do not agree, the case shall be referred for resolution to the

appropriate regional Assistant Directors, Division of Mental Health Services, who may, in making their decision, request clinical and technical input from hospital central office staff. Resolution, in instances of continuing disagreement, rests with the Division Director or the Director's designee.

7. All transfer requests are to be handled in a timely manner.

8. The basis for the transfer decision shall be documented in the patient's record.

(f) The following procedures shall be followed in cases of emergency transfers:

1. Emergency shall be defined, for the purposes of this subchapter, as imminent danger of serious bodily harm to self or others, as evidenced by a recent incident or a change in psychiatric status which less restrictive available treatment alternatives other than transfer cannot adequately address and which requires removal from the patient's current setting. Only the factors in N.J.A.C. 10:36-3.3(a)4 or 8 may serve as the basis for an emergency transfer.

2. Emergency transfers shall take place only upon prior agreement between the CEOs of the institutions.

3. Staff at the sending hospital shall notify the relevant County Adjuster(s), family, and attorney of the resident being transferred of the transfer and the reason for the transfer as soon as possible after the transfer decision has been made.

4. The transfer coordinator or, when unavailable, the administratively responsible person of the sending hospital must contact directly the CEO or transfer coordinator at the receiving institution and transmit verbally the factors supporting the transfer, as well as the reasons for the emergent nature of the transfer. Supporting documentation must be faxed prior to the final decision to transfer.

5. If, after transfer, the CEO of the receiving hospital objects to an emergency transfer, he or she shall review the case with the CEO of the sending institution. If agreement cannot be reached, the matter shall be referred to the Assistant Director of the receiving region.

6. That Assistant Director shall consult with his or her counterpart from the sending region to resolve the issue.

7. If agreement cannot be reached by the Assistant Directors, the issue shall

7

be referred for resolution to the Director or the Director's designee.

        8. The basis for the transfer decision shall be documented in the patient's record.

N.J.A.C. 10:36-3.4

        It is unclear based on the allegations contained in the complaint whether or not Plaintiff's transfer was emergent or not.  However, the codifying of the above listed procedures do not give Plaintiff a Due Process entitlement; they are merely internal procedures which establish the administrative process the hospitals should take in order to preserve order and uniformity in the State system.

        The Administrative Code does prescribe the administrative measures a patient should take if he feels he has been unjustly transferred.

        1. In an emergency as defined at N.J.A.C. 10:36-3.4(e)1, a patient may be transferred in accordance with procedures outlined at N.J.A.C. 10:36-3.4(e).

        2. If a patient or a representative of the patient objects to such a transfer, they may submit their position in writing to the Division after implementation of the transfer. A designee of the Division Director shall review the basis for the transfer after the transfer, and shall provide the patient or his or her representative with an opportunity to state the basis for their objection and present any relevant facts or statements. The designee shall not be a member of the patient's treatment team at either the sending or receiving hospital and shall provide an independent review of the need for the proposed transfer. The designee shall have the authority to approve or disapprove the proposed

8

transfer. This decision shall be in writing and shall become part of the patient's clinical record.

N.J.A.C. 10:36-3.5

It is this provision which grants Plaintiff a procedural due process right to a post deprivation process if he feels he has been wrongly subject to transfer.

It has been held that "the [d]ue [p]rocess [c]lause of the [F]ourteenth [A]mendment entitles an involuntarily committed mental patient to a hearing when transferred to a hospital where conditions are substantially more restrictive." Eubanks v. Clark et. al., 434 F. Supp. 1022, 1029 (E.D.P.A. 1977). Due to the consequences that a decision to transfer patients to a more secure setting has to patients, "some minimal degree of due process is required to make as certain as the hospital authorities reasonably can the correctness of their decision." Jones v. Robinson, 142 U.S. App. D.C. 221 (1971).   In his complaint, Plaintiff alleges that the Ann Klein Forensic Center is a higher security institution than the Greystone Park Psychiatric Hospital.  Plaintiff has alleged that he was transferred without a proper hearing as outlined above.  However, he has not alleged that he took advantage of the post deprivation administrative process afforded to him.

Plaintiff has not alleged that he exhausted the administrative remedies provided to him above.  "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." McKart v. United States, 395 U.S. 185, 193 (1969).  "The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Id. (Citing Myers v. Bethlehem

9

Shipbuilding Corp., 303 U.S. 41, 50-51 (1938)).  "The doctrine is applied in a number of

different situations and is, like most judicial doctrines, subject to numerous exceptions."  Id.  In

Booth v. Churner, 532 U.S. 731 (2001), the Supreme Court held that Congress intended via the

Prison Litigation Reform Act for a prisoner to invoke "such administrative remedies as are

available" in the prison before he may file suit contesting prison conditions in federal court.

However, Plaintiff in the present case is an involuntarily committed patient, not a prisoner.

Plaintiff was found not guilty by reason of insanity and thus his current detention is not part of a

punishment imposed for a criminal conviction but rather a civil commitment for non-punitive

purposes.  See State v. Krol, 68 N.J. 236 (1975).  In Page v. Torrey, 201 F.3d 1136 (Cal. 2000),

the Court of Appeals for the Ninth Circuit held that the civil rights complaint of a detainee who

was civilly committed pursuant to the California Sexually Violent Predator's Act was not subject

to dismissal for failure to exhaust his administrative remedies.

    The Supreme Court has held on numerous occasions that when federal claims are

premised on § 1983, as they are here, "we have not required exhaustion of state judicial or

administrative remedies, recognizing the paramount role Congress has assigned to the federal

courts to protect constitutional rights".  Patsy v. Board of Regents of State of Fla., 457 U.S. 496,

500-502 (U.S. 1982).  Nonetheless when evaluating whether or not exhaustion of the

administrative remedies required by state administrative agencies is required, "the focus is not so

much on the role assigned to the state agency, but the role of the state agency becomes important

once a court finds that deferring its exercise of jurisdiction is consistent with statutory intent."

Id. at 502.  The United States Supreme Court has held that an unauthorized intentional

deprivation of a property interest by a state employee does not constitute a violation of the

10

procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  For intentional, as for negligent deprivations by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy.  Id.  Here, Plaintiff was afforded a reasonable post-deprivation remedy provided by the State agency, but has failed to take advantage of it.

Although Plaintiff has a right to be committed to the least restrictive hospital necessary to ensure adequate treatment while minimizing security risks as described above, he has been given an adequate post deprivation process to redress alleged violations of this right.  If plaintiff fails to exercise his right to this process, then the Federal Court has no business injecting itself into this internal process at this juncture.  Therefore, Defendants' motion on this ground will be granted.

### CONCLUSION

For all the reasons stated above, Defendants' motion to dismiss Plaintiff's complaint will be DENIED as it relates to the excessive force count contained in paragraph (36) of the complaint, but GRANTED as it relates to the denial of due process counts contained in paragraphs (37) and (38) of the complaint.

/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

Dated: November 10, 2005

11